Robert Lee TURNER and Sandra Kay Turner, as Legal Representatives on behalf of Robert Cleveland Turner, Petitioners–Appellants,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent–Appellee.

Veronica Flanagan, as parent and next friend of Ashley Flanagan, Petitioner–appellant,

v.

Secretary of Health and Human Services, Respondent–Appellee.

Nos. 01–5043, 01–5054.

United States Court of Appeals, Federal Circuit.

DECIDED: Oct. 16, 2001.

Scott R. Brann, of Houston, TX, argued for petitioners-appellants in 01–5043.

Robert T. Moxley, Gage and Moxley, PC, of Cheyenne, WY, argued for petitioner-appellant in 01–5054.

Mark W. Rogers, Assistant Director, Torts Branch, Civil Division, Department of Justice, of Washington, DC, argued for

respondents-appellees in 01–5043 and 01–5054. With him on the briefs were Stuart E. Schiffer, Acting Assistant Attorney General; Helene M. Goldberg, Director; and John Lodge Euler, Deputy Director.

Before NEWMAN, MICHEL, and LOURIE, Circuit Judges.

LOURIE, Circuit Judge.

Robert and Sandra Turner and Veronica Flanagan appeal from the judgments of the United States Court of Federal Claims affirming the special master's denial of their claims under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa–1 to 34 ("Vaccine Act"). *Turner v. Sec'y of Health and Human Servs.,* 48 Fed.Cl. 243 (2000); *Flanagan v. Sec'y of Health and Human Servs.,* 48 Fed.Cl. 169 (2000). Because the court did not err in denying their petitions for compensation, we affirm.

## BACKGROUND

Mr. and Mrs. Turner are the legal representatives of Robert Cleveland Turner ("Bobby"), who suffers from a genetic disease, tuberous sclerosis ("TS"). *Turner,* 48 Fed.Cl. at 244. After receiving his second Diphtheria Pertussis Tetanus ("DPT") vaccination on November 21, 1978, Bobby had a fever, cried, and was irritable. *Id.* He also had significant infantile spasms. *Id.* The Turners filed a petition for compensation under the Vaccine Act on Bobby's behalf, alleging that Bobby experienced the first onset of a residual seizure disorder within three days after his second DPT vaccination, that the DPT vaccination significantly aggravated his TS condition, and that his injury was therefore "on-Table." *Id.* The special master issued a decision holding that Bobby's seizures were "on-Table" and therefore presumed to have been caused by the vaccine. *Id.*

The Secretary, however, presented new evidence to the court in this and other pending TS cases suggesting that TS, not DPT vaccinations, causes seizures in TS patients. *Id.* The special master then issued an Omnibus Order consolidating all TS-related vaccine cases and conducted a special hearing to consider the additional evidence. *Id.* In the "TS Omnibus Decision," the special master found that "TS is the overwhelming cause of seizures in a child afflicted with the disease, unless he develops a fever or some other well-recognized reaction to a vaccination." *Barnes v. Sec'y of Health and Human Servs.,* 1997 WL 620115, at *34 (Fed.Cl. Sept. 15, 1997). This court approved that rationale in *Hanlon v. Secretary of Health and Human Services,* 191 F.3d 1344 (Fed.Cir.1999).

The special master then ordered the production of medical reports in Bobby's case to determine whether to award compensation in light of the TS Omnibus Decision. *Turner,* 48 Fed.Cl. at 244–45. After reviewing the medical reports, the special master determined that TS had caused Bobby's seizures and dismissed the petition. *Id.* The Court of Federal Claims affirmed, rejecting Turner's argument that the special master had improperly allocated the burdens of proof in the Vaccine Act by requiring that the vaccine reaction be "neurologically significant" apart from TS. *Id.* at 247.

Similarly, Ms. Flanagan is the parent and next friend of Ashley Flanagan, who also suffers from TS. *Flanagan,* 48 Fed.Cl. at 170. Ashley had convulsions after receiving her third DPT vaccination on March 26, 1981. *Id.* She became feverish, vomited, and appeared listless. *Id.* Ashley suffered from four other febrile seizures during the first five years of her life, but she developed normally during those years. *Id.* at 173. She later suffered from more frequent afebrile seizures and, when

she was about ten years old, her intelligence and other skills declined. *Id.*

Flanagan filed a petition for compensation on behalf of Ashley. *Id.* at 190. The special master concluded that Ashley had suffered a significant aggravation of her TS and was entitled to compensation. *Id.* at 171. The special master then reconsidered Ashley's case in light of the TS Omnibus Decision and reconfirmed the original compensation award, noting that Ashley had suffered from on-Table symptoms of fever, vomiting, listlessness, and unresponsiveness. *Id.* at 172. The Secretary then moved for reconsideration in light of new medical evidence regarding the medical significance of Ashley's symptoms. *Id.* The special master credited testimony that Ashley's vaccine reaction did not contribute to her current condition and issued a final decision denying compensation. *Id.* The Court of Federal Claims affirmed. *Id.* at 175. Flanagan filed a motion for a new trial, which the Court of Federal Claims denied. *Flanagan v. Sec'y Health and Human Servs.*, 48 Fed.Cl. 169 (Fed.Cl. 2000) (order).

Turner and Flanagan appealed; the appeals were consolidated. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3) (1994).

## DISCUSSION

### A. *Vaccine Act Claims*

■ The Vaccine Act provides that the Court of Federal Claims may set aside the decision of a special master only if the special master's fact findings are arbitrary and capricious, its legal conclusions are not in accordance with law, or its discretionary rulings are an abuse of discretion. 42 U.S.C. § 300aa–12(e)(2)(B) (1994); *Munn v. Sec'y of Health and Human Servs.*, 970 F.2d 863, 870 & n. 10 (Fed.Cir.1992). We apply that same standard when reviewing the judgment of the Court of Federal Claims. *Munn,* 970 F.2d at 870 & n. 10.

The petitioners argue that the special master created an improper presumption in favor of the government that, in all TS cases, TS is presumed to have caused all seizures. They argue that the special master impermissibly extended the *Hanlon* presumption to on-Table children who suffer from additional symptoms. Therefore, they assert that the special master erred in requiring them to rebut that presumption by showing the neurological significance of the vaccine reaction symptoms and argue that they should not have to prove any additional symptoms or injuries other than those that established that their children were "on-Table."

The Secretary responds that the special master correctly applied the Vaccine Act by requiring that the government rebut the presumption of an on-Table injury under 42 U.S.C. § 300aa–13(a)(1)(B). The Secretary argues that the special master properly credited the government's rebuttal evidence that the injuries were caused by a "factor unrelated" to the vaccine, *viz.,* TS.

■ We agree with the Secretary that the Court of Federal Claims and the special master did not ignore the presumption afforded to the petitioners by their on-Table injuries. The Vaccine Act provides a presumption of a vaccine injury if the petitioners have shown that the injury is "on-Table." 42 U.S.C. §§ 300aa–11(c)(1), –14(a) (Supp. V 1999). Compensation may be awarded, however, only if there is "not a preponderance of the evidence that the illness, disability, injury, condition, or death described in the petition is due to factors unrelated to the administration of the vaccine described in the petition." 42 U.S.C. § 300aa–13(a)(1)(B) (1994). The government may therefore rebut the presumption of an on-Table injury by showing that the injury complained of resulted from some factor unrelated to the vaccine.

In the present cases, the special master properly afforded the petitioners the presumption of a vaccine injury and then evaluated the government's rebuttal evidence before it determined that the preponderance of the evidence demonstrated that TS was responsible for the unfortunate medical problems that are the bases for the petitioners' claims. The special master's evaluation of the neurological significance of the symptoms did not impermissibly deprive petitioners of the presumption of a vaccine injury. That presumption was applied before the government availed itself of its statutory opportunity to rebut it. Nor did the special master create a new "neurological significance" test, as petitioners assert. The special master properly evaluated the neurological significance of petitioners' symptoms only in the context of weighing the strength of the government's rebuttal evidence that TS was responsible for those symptoms and the ensuing injuries.

The petitioners correctly point out that their children suffered from additional symptoms than those at issue in *Hanlon*, *i.e.*, they experienced febrile seizures and other symptoms characteristic of vaccine reactions. In *Hanlon*, we affirmed the special master's determination that the government had sufficiently rebutted the on-Table presumption of a vaccine reaction by showing that TS, a factor unrelated to the vaccine, had caused the petitioner's afebrile seizures. *Hanlon*, 191 F.3d at 1349. In doing so, we agreed with the statement that "where a TS child receives DPT vaccine and remains perfectly normal (in temperature, eating, sleeping, affect, and activity) but has a seizure within three days, TS, not DPT, is the cause in fact of that seizure." *Id.* However, *Hanlon* did not create an irrebuttable presumption that no recovery can be obtained when a diagnosis of TS is made. Rather, we affirmed the special master's conclusion, in light of all the evidence, that the Secretary

demonstrated that TS, a factor unrelated to DPT vaccination, caused the particular injuries suffered in *Hanlon*. In *Hanlon*, we noted with approval the statement from the TS Omnibus decision that TS cannot preclude recovery if the child's injuries are obviously related to the vaccination, such as if the child goes into an "immediate status epilepticus (prolonged seizure) or even coma as his first sign of a seizure disorder. Where such an event occurs, the DPT vaccine is indeed the cause." *Hanlon*, 191 F.3d at 1349 n. 2. Petitioners' injuries in these cases are not so obviously related.

In the present cases, the government submitted evidence different from that in *Hanlon* relating to the additional symptoms suffered by these children, and the special master credited that evidence as showing that TS, rather than the vaccines, had caused the disabilities for which compensation is claimed. Specifically, the special master credited the testimony of the government's expert, Dr. Guggenheim, who stated that "Bobby's infantile spasms were related to his underlying TS because he did not have an acute encephalopathy after his DPT reaction." *Turner*, 48 Fed. Cl. at 247. In Flanagan's case, the special master relied on the testimony of Dr. Holmes, who opined that Ashley Flanagan's seizures were probably caused by the DPT vaccination, but concluded that her current condition resulted from the underlying TS and had not been significantly aggravated by the vaccine reaction. *Flanagan*, 48 Fed.Cl. at 173. The special master chose not to credit the report of the petitioners' expert, Dr. Kinsbourne, noting that he "failed to interpret Bobby's symptoms," *Turner*, 48 Fed.Cl. at 248, and that he "has not been in practice for ten years and teaches non-medical students about the organic basis for psychological problems at ... a non-medical school." *Flanagan* at 173. The special master

properly considered the relevant evidence, drew plausible inferences, and stated a rational basis for the decisions. The Court of Federal Claims determined that the special master's decision to credit the expert testimony proffered by the government was not arbitrary and capricious, and petitioners have not offered any arguments or evidence to persuade us otherwise.

We therefore affirm the decisions of the Court of Federal Claims that the government met its burden to show by a preponderance of the evidence that TS, a factor unrelated to the vaccination, caused the petitioners' injuries.

### B. *New Trial*

Flanagan argues separately on appeal that the Court of Federal Claims erred in not granting a new trial subject to a *de novo* standard of review, pursuant to Court of Federal Claims Rule 59.[1] Flanagan asserts that the court should have granted such a new trial because the special master did not have sufficient evidence to conclude that Ashley's seizures were caused by TS, and that a new trial is necessary to prevent manifest injustice.

■■■■■ We agree with the government that the Court of Federal Claims properly denied Flanagan's new trial motion. Under the Vaccine Act, its jurisdiction to review the special master's decision is set forth as follows:

(2) Upon the filing of a motion [to review a special master's decision], the United States Court of Federal Claims shall have jurisdiction to undertake a review of the record of the proceedings and may thereafter-

(A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,

(B) set aside any findings of fact or conclusion of law of the special master found to be *arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law* and issue its own findings of fact and conclusions of law, or

(C) remand the petition to the special master for further action in accordance with the court's direction.

42 U.S.C. § 300aa–12(e) (1994) (emphasis added). The jurisdiction of the Court of Federal Claims to review the special master's findings of fact is thus confined to reviewing the record under the deferential standard of review in § 12(e)(2)(B). *See Munn*, 970 F.2d at 869 (noting that the court's role is one of reviewing the special master's determinations by taking one of the actions set forth in § 300aa–12(e)). It may not review the special master's findings *de novo* as part of its inherent powers as a trial court. Rule 59 thus has limited application to the decisions of the Court of Federal Claims following judgment in vaccine cases. Vaccine Rule 31 allows a party to seek reconsideration of a judge's decision, invoking Rule 59. R. Ct. Fed.Cl. App. J 31. ("If a party seeks reconsideration of a judge's decision, [RCFC] 59 shall apply."). However, such reconsideration is

---

1. Rule 59. New Trials; Rehearings; Amendment of Judgments; Reconsideration

 (a) Grounds. (1) A new trial or rehearing or reconsideration may be granted to all or any of the parties and on all or part of the issues, for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States. On a motion under this rule, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

to be conducted according to the standards provided explicitly in the Vaccine Act under § 12(e)(2). That standard may not be circumvented by requesting the Court of Federal Claims to conduct a new trial to review the evidence *de novo* when it could not have conducted such a trial in the first instance.

 We conclude that the authority of the Court of Federal Claims to grant a new trial is limited to reconsidering its decision under the standards set forth in § 12(e)(2). We also conclude that the court did not err in its denial of the new trial motion because Flanagan did not demonstrate any basis for setting aside the special master's fact findings or legal conclusions. We therefore affirm the decision of the Court of Federal Claims denying Flanagan's motion for a new trial. We have considered petitioners' remaining arguments and find them to be unpersuasive.

## CONCLUSION

The judgments of the Court of Federal Claims in *Turner* and *Flanagan* are

*AFFIRMED.*