**John HANLON and Ruth Ann Hanlon, Parents and next friends of Michael Hanlon, Petitioners–Appellants,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent–Appellee.**

No. 98–5120.

United States Court of Appeals, Federal Circuit.

Decided Sept. 8, 1999.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Oct. 20, 1999.

---

Robert T. Moxley, Gage and Moxley, Cheyenne, Wyoming, argued, for the petitioners-appellants.

Mary Hampton Mason, Attorney, Torts Branch, Civil Division, U.S. Department of Justice, Washington, D.C., argued, for the respondent-appellee. · With her on the brief were Frank W. Hunger, Assistant Attorney General, Helene M. Goldberg, John Lodge Euler, and Gerard W. Fischer, Attorneys.

Before MAYER, Chief Judge, LOURIE, Circuit Judge, and BLACK, District Judge.*

MAYER, Chief Judge.

John and Ruth Ann Hanlon appeal the judgment of the United States Court of Federal Claims, *Hanlon v. Secretary of Health and Human Services*, 40 Fed. Cl. 625 (1998), affirming the special master's

---

* Honorable Bruce D. Black, District Judge, United States District Court for the District of New Mexico, sitting by designation.

denial of their claim under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa–1 to –34 (1994 & West Supp.1999) ("Vaccine Act"). Because the special master and the Court of Federal Claims properly evaluated their petition, we affirm.

## Background

Michael Hanlon was born on March 30, 1978 with tuberous sclerosis (TS), a genetic disorder that results in cortical lesions or tubers on the brain. On June 1, 1978, he received his first Diphtheria–Pertussis–Tetanus (DPT) vaccination and suffered his first seizure the next day. Michael continued to suffer from episodes of focal afebrile (without fever) seizures through 1990. His parents filed a petition under the Vaccine Act on September 26, 1990, seeking compensation for the seizures allegedly caused by Michaels DPT vaccination.

In a May 31, 1994 decision, the special master determined that because the first seizure occurred within three days of Michaels first DPT vaccination, the Hanlons claim fell under the Vaccine Injury Table (Table). *See* 42 U.S.C. 300aa–14. Finding that the DPT vaccine had significantly aggravated Michaels TS, the special master held that compensation was appropriate under the Vaccine Act. The main evidence supporting this conclusion was testimony given in 1991 by Dr. Manuel Gomez, the worlds leading expert in TS. *See Costa v. Secretary of Dept. of Health and Human Servs.*, 1992 WL 47334, at *5–*8 (Cl.Ct. Feb. 26, 1992). Dr. Gomez said that seizures were the most common presenting symptom in TS patients. *See id.* at *7. He also stated that the DPT vaccine could not aggravate TS itself; rather, it may aggravate or induce TS seizures. *See id.*, at *8.

Prior to a ruling on damages, the Secretary of Health and Human Services (the Secretary) successfully sought reconsideration of the liability determination in light of new evidence showing that a factor unrelated to the DPT vaccine caused Michaels focal afebrile seizures. Subsequently, in a September 15, 1997 omnibus decision, the special master denied compensation. *See Barnes v. Secretary, Dept. of Health and Human Servs.*, 1997 WL 620115 (Fed.Cl. Sept. 15, 1997).

The special master held that, although the Hanlons demonstrated significant aggravation of a Table injury, *see* 42 U.S.C. 300aa–33(4), the Secretary successfully rebutted the statutory presumption by proving that a factor unrelated to the DPT vaccine caused the seizures, *see id.* 300aa–13(a)(1)(B). In particular, the Secretary presented several recent studies indicating that TS caused the type of seizures—afebrile—that Michael suffered. Based on this new evidence, Dr. Gomez testified that, contrary to his previous opinion, the cortical lesions in Michaels brain, due to TS, were the sole cause of both his initial seizure onset and his current residual seizure disorder. *See Barnes*, 1997 WL 620115, at *22–*25. After weighing voluminous evidence on the relationship between seizures and both TS and the DPT vaccine, the special master concluded that where a TS child receives DPT vaccine and remains perfectly normal (in temperature, eating, sleeping, affect, and activity) but has a seizure within three days, TS, not DPT, is the cause in fact of that seizure. *Id.* at *33. Thus, given the number of cortical tubers on Michaels brain (at least ten), the special master concluded that his preexisting TS was the actual cause in fact of his seizures and that their onset was merely coincidental to his first DPT vaccination. *Id.* at *34.

The Hanlons sought review of the decision in the Court of Federal Claims. They argued that TS could not be a factor unrelated because it was not an infection, toxin[ ], trauma, or metabolic disturbance[ ] under section 300–aa14(b)(3)(B); challenged the special masters factual findings; and asserted that if the findings were correct, they were insufficient to show causation under the Vaccine Act. The Hanlons also claimed that the Secretary unethically retained Dr. Gomez while he was their expert witness.

The Court of Federal Claims held that the Vaccine Act permitted consideration of TS as a factor unrelated to the DPT vaccine. *See* 40 Fed.Cl. at 631. Moreover, it found no evidence to support the contention that the Secretary had stolen Dr. Gomez from the Hanlons. *See id.* at 632. The court did hold that the special master erred in characterizing the claim as a significant aggravation case since TS was not a condition listed in the Table. *See id.* at 628. This error was harmless, however, because Michaels seizures still satisfied the requirements for the presumption of a Table injury—i.e., a residual seizure disorder.[1] *See id.* Finally, the Court of Federal Claims affirmed the special masters conclusion that the Secretary had proved by a preponderance of the evidence that Michaels TS was a factor unrelated to the DPT vaccine that actually caused his seizures. *See id.* at 635. The Hanlons appeal.

### Discussion

The Hanlons challenge both the special master's factual findings, as affirmed by the Court of Federal Claims, and the court's interpretation of the Vaccine Act. Under the Vaccine Act, the Court of Federal Claims may not disturb the factual findings of the special master unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 300aa–12(e)(2)(B). Because it is a legal conclusion, we review *de novo* the court's affirmance of the special master's factual determinations. *See Hines v. Secretary of Dep't of Health and Human Servs.,* 940 F.2d 1518, 1524 (Fed.Cir.1991). "In effect ... we review the underlying decision of the special master under the arbitrary and capricious standard of § 300aa–12(e)(2)(B)." *Id.* Statutory interpretation is a question of law, which we review *de novo. See Martin v. Secretary of Health*

*and Human Servs.,* 62 F.3d 1403, 1405 (Fed.Cir.1995).

After establishing that Michael suffered from a Table injury, the Hanlons are entitled to compensation unless the Secretary shows, by a preponderance of the evidence, that a factor unrelated to the vaccine caused the injury. *See Knudsen v. Secretary of Dep't of Health and Human Servs.,* 35 F.3d 543, 547 (Fed.Cir.1994); 42 U.S.C. § 300aa–13(a)(1)(B). Thus, once the special master finds "causation between the vaccine and the injury, [s]he is required under the Vaccine Act to make a further finding on the question of alternative causation." *Knudsen,* 35 F.3d at 551. This inquiry "involves ascertaining whether a sequence of cause and effect is 'logical' and legally probable, not medically or scientifically certain." *Id.* at 548–49 (describing the standard for causation in off-Table cases, and holding that this standard is the same for alternative causation).

The Hanlons first argue that Michael's TS cannot be used to rebut his Table injury. Because section 300aa–14(b)(3)(B) refers only to "infection, toxins, trauma, or metabolic disturbances," TS cannot be a factor unrelated to the vaccine. This contention misconstrues the Vaccine Act. Section 300aa–14(b)(3)(B) applies only when determining whether there is a Table injury. Once a Table injury is established, the Secretary may rebut the presumption pursuant to section 300aa–13(a)(2), which states that "'factors unrelated to the administration of the vaccine' ... *may* ... include infection, toxins, trauma ..., or metabolic disturbances." (emphasis added). The Court of Federal Claims, therefore, did not err in considering TS as the alternative cause of Michael's Table injury.

The Hanlons further challenge the special master's factual finding that TS

---

1. On March 10, 1995, the United States Department of Health and Human Services removed residual seizure disorders from the Table due, in part, to the Institute of Medicine's statement that "afebrile seizures are not causally related to DPT vaccine." 60 Fed.Reg. 7678, 7690 (1995).

was the actual cause of Michael's seizures. There is ample support in the record for this determination; it was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 300aa–12(e)(2)(B).

■ While the Hanlons acknowledge the role of TS in ongoing seizures, they dispute the finding that TS causes the onset of seizures. In making this determination, the special master relied on several studies that concluded that TS, not the DPT vaccine, causes afebrile seizures. Moreover, Dr. Gomez stated that the cause of Michael's seizure onset was "the cortical issues in the brain, which is part of tuberous sclerosis," and that the DPT vaccine did not have "any effect in the course of the disease." Given his reputation as the world's expert in TS and the quality of his testimony, the special master found that Dr. Gomez was the most credible witness. *See Barnes,* 1997 WL 620115, at *32. Such credibility determinations are "virtually unreviewable." *Bradley v. Secretary of Dep't of Health and Human Servs.,* 991 F.2d 1570, 1575 (Fed.Cir.1993). Accordingly, we agree with the Court of Federal Claims that the special master was not arbitrary or capricious in finding that "where a TS child receives DPT vaccine and remains perfectly normal (in temperature, eating, sleeping, affect, and activity) but has a seizure within three days, TS, not DPT, is the cause in fact of that seizure. This is so whether or not the initial seizure takes the form of an infantile spasm or some other type of afebrile seizure such as Michael Hanlon ... had." *Barnes,* 1997 WL 620115, at *33.[2]

■ The Hanlons respond that, even under the special master's finding, the Secretary did not meet her statutory burden of proving that TS was the cause of Michael's seizures. Citing *Knudsen,* they assert that the Court of Federal Claims improperly applied the "unity theory" of causation—i.e., accepting the only condition that explains all of the observed symptoms as the cause in fact. We rejected this theory as a basis of proof for alternative causation, holding also that "[t]he bare statistical fact that there are more reported cases of viral encephalopathies than there are reported cases of DTP encephalopathies is not evidence that in a particular case an encephalopathy following a DTP vaccination was in fact caused by a viral infection present in the child and not caused by the DTP vaccine." *See Knudsen,* 35 F.3d at 550. The Hanlons contend that the finding of causation here is similarly unjustified. We disagree.

Proof of the relationship between TS and Michael's seizures is much more than a "bare statistical fact." As noted, the Secretary presented evidence that the DPT vaccine does not cause afebrile seizures, that the cortical lesions or tubers in TS children do cause afebrile seizures, and expert opinion that TS, not the DPT vaccine, caused Michael's seizures. The special master did not conclude merely that TS was the most likely of several possible causes. Rather, based on a "logical and legally probable" sequence of cause and effect, she determined that TS was the actual alternative cause of Michael's seizures. A reversal of this finding would improperly require proof of causation that is "medically or scientifically certain." *Knudsen,* 35 F.3d at 549.

■ We also reject the Hanlons' contention that the special master erred in allowing Dr. Gomez to testify because they had previously retained him as their expert witness. "We review such evidentiary rulings for abuse of discretion." *NEC Corp. v. United States,* 151 F.3d 1361, 1375 (Fed.Cir.1998); *see also Whitecotton v. Secretary of Health and Human Servs.,* 81 F.3d 1099, 1108 (Fed.Cir.1996) ("[T]he permissible scope of the special master's in-

---

2. We note, however, that TS does not necessarily preclude compensation in future cases: "No one expects a TS child to go into immediate status epilepticus (prolonged seizure) or diate status epilepticus (prolonged seizure) or even coma as his first sign of a seizure disorder. Where such an event occurs, the DPT vaccine is indeed the cause." *Barnes,* 1997 WL 620115, at *33.

quiry is virtually unlimited. Congress desired the special masters to have very wide discretion with respect to the evidence they would consider and the weight to be assigned that evidence.").

■ It appears from the record that the Hanlons did not retain Dr. Gomez as an expert witness. He provided expert testimony in 1991 for the Hanlons' *counsel* in a different case. This does not mandate disqualification unless it is reasonable to conclude that Dr. Gomez possessed confidential information that would prejudice the Hanlons. *See, e.g., Koch Refining Co. v. Jennifer L. Boudreaux MV,* 85 F.3d 1178, 1181 (5th Cir.1996); *Palmer v. Ozbek,* 144 F.R.D. 66, 67 (D.Md.1992). They present no evidence that warrants such a finding.

■ The special master asked for new testimony from Dr. Gomez, who had changed his opinion in light of recently published medical literature. *See Barnes,* 1997 WL 620115, at *22. Under section 300aa–12(d)(3)(B)(iii), a special master "may require the testimony of any person and the production of any documents as may be reasonable and necessary." Thus, it is not an abuse of discretion to consider new pertinent medical evidence that was not available at the time of the original petition. *See McAllister v. Secretary of Health and Human Servs.,* 70 F.3d 1240, 1244 (Fed.Cir.1995) ("The question whether to consider new evidence on . . . any . . . point previously decided is committed to the special master . . . in the first instance."). The relevance of Dr. Gomez' testimony is clear and it was within the special master's discretion to call him as a witness.

### Conclusion

Accordingly, the judgment of the Court of Federal Claims is affirmed.

*AFFIRMED*