John C. HULBERT and Wilma A. Hulbert, Parents and Next Friends of Trevor Kenneth Hulbert, Petitioner,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent.

No. 01–5128.

United States Court of Appeals, Federal Circuit.

May 10, 2002.

Before NEWMAN, GAJARSA, and PROST, Circuit Judges.

PER CURIAM.

John C. and Wilma A. Hulbert (collectively "the Hulberts") appeal the May 16, 2001, judgment of the United States Court of Federal Claims which affirmed the special master's denial of their claim under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. § § 300aa–1 to 34 (1994) ("Vaccine Act"). Because the special master and the Court of Federal Claims did not err in evaluating the Hulberts' claim, we *affirm*.

## BACKGROUND

The Hulberts are the parents and next friends of Trevor Kenneth Hulbert ("Trevor") who, since his birth on July 4, 1985, has suffered from tuberous sclerosis ("TS"). On September 26, 1985, Trevor received a Diphtheria Pertussis Tetanus ("DPT") vaccination. Within three days of receiving the DPT vaccination, Trevor suffered a seizure as well as localized redness, heat, swelling in the area vaccinated, a low fever, and some fussiness. Today, Trevor is mentally retarded and significantly delayed with autistic features.

The Hulberts filed a petition for compensation against the Department of Health and Human Services ("HHS") on September 25, 1990, pursuant to § 11 of the Vaccine Act, alleging that the DPT vaccination aggravated Trevor's pre-existing TS. Two hearings were held before the special master's initial ruling on entitlement. The first was held on October 21, 1991. At that hearing Dr. Manuel Gomez of the Mayo Clinic, testifying on behalf of the Hulberts, stated that if Trevor's seizure onset occurred within three days of his DPT vaccination it was very likely that the vaccine precipitated or triggered his seizures. The second hearing was held on November 16, 1994. Dr. Wilma Alice Hulbert testified for the Hulberts, but her testimony was restricted to the issue of the onset of Trevor's seizures. As a result of these two hearings, on December 28, 1994, the special master held that the DPT vaccine had caused significant aggravation of Trevor's TS and the Hulberts were thus entitled to compensation under the Vaccine Act. The special master requested that the attorneys work together to try to settle damages.

In March of 1995, before damages had been determined or judgment entered, the government presented new evidence to the special master. Included in the new evidence was an article by Dr. Gomez that stated some of his 1991 testimony was "confusing or meaningless, if not erroneous." Based on this new evidence, the special master granted the government's motion to reconsider her holding in all the pending TS cases and to require additional expert testimony. Thereafter, the special master consolidated all the TS cases and conducted an Omnibus hearing.

At the June 1997 Omnibus hearing, Dr. Gomez testified that he had reconsidered some of his earlier opinions and that he was no longer of the view that the DPT vaccine causes or triggers seizure onset in children suffering from TS. Thus, the special master issued an Omnibus decision denying compensation in two test cases

and thereafter, issued an order that specifically addressed this case. The order stated:

> Pursuant to my holding in the TS Omnibus Decision, I have examined my decision that petitioners are entitled to compensation in this case, dated December 28, 1994.
>
> Trevor experienced more than afebrile seizures within three days of his DPT vaccination, i.e., swelling, redness, and heat at the vaccine site, low fever, a little fussiness. The court cannot determine at this time whether Trevor's swelling at the vaccine site, low fever, and fussiness are merely a transient reaction to DPT or part of a more involved reaction ... and needs expert testimony to reach a conclusion.

Following this order, the special master held an evidentiary hearing on January 28, 2000, to obtain expert testimony on the Hulberts' case. Dr. Gomez did not testify at the hearing. Rather, the expert witnesses that testified were Dr. Marcel Kinsbourne for the Hulberts, and Dr. Max Wiznitzer for the government. On February 20, 2001, relying solely on the evidence produced at the January 2000 hearing, the special master found that the DPT vaccine did not significantly aggravate Trevor's TS and thereby cause the onset of his seizures.

On May 16, 2001, the Court of Federal Claims affirmed the decision of the special master. The court held the special master did not improperly shift the burden of proof to the Hulberts and her credibility determination as to the expert witnesses was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." In addition, the court held that the special master's denial of the Hulberts' motion to strike Dr. Gomez's testimony because he had previously been their expert witness did not constitute reversible error. The Hulberts timely appealed to this court.

## DISCUSSION

The Court of Federal Claims, pursuant to the Vaccine Act, may set aside the decision of a special master only if the "findings of fact or conclusion of law of the special master [are] found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ...." 42 U.S.C. § 300aa–12(e)(2)(B) (1994). This court applies the same standard when reviewing the decision of the Court of Federal Claims. *Turner v. Sec'y of Health and Hum. Servs.*, 268 F.3d 1334, 1337 (Fed.Cir. 2001).

The Hulberts assert on appeal that the government's retention of Dr. Gomez was the product of improper conduct and that it was fundamentally unfair for the court to allow Dr. Gomez to testify to his change of opinion. Specifically, the Hulberts argue that the government's contact and use of Dr. Gomez, ex parte, was prejudicial to their case because Dr. Gomez had previously been retained by them as their expert witness. We disagree.

Pursuant to 42 U.S.C. § 300aa–12(d)(3)(B)(iii), "a special master may require the testimony of any person and the production of any documents as may be reasonable and necessary." The special master specifically requested that Dr. Gomez testify at the June 1997 TS Omnibus hearing because Dr. Gomez had changed his opinion concerning DPT as a trigger of seizures in TS children. *Barnes v. Sec'y, Dept. of Health and Hum. Servs.*, 1997 WL 620115, *22 (Fed.Cl.1997). In *Hanlon v. Secretary of Health and Human Services*, 191 F.3d 1344, 1350 (Fed.Cir.1999), faced with the challenge to Dr. Gomez's testimony at the Omnibus hearing, this court held that "the relevance of Dr. Go-

mez's testimony is clear and it was within the special master's discretion to call him as a witness."

The Hulberts, however, contend that in *Hanlon* this court was presented with a different circumstance, and therefore this case warrants a different outcome. First, the Hulberts argue that in *Hanlon* Dr. Gomez was not the Hanlons' expert witness whereas in this case he was. The Hulberts further argue that in *Hanlon* this court stated that an expert witness' disqualification is not mandated "unless it is reasonable to conclude that Dr. Gomez possessed confidential information that would prejudice the Hanlons." *Id.* at 1350. In *Hanlon* this court concluded that the evidence before it did not warrant a finding of confidential information. *Id.* In this case, however, the Hulberts contend Dr. Gomez did possess confidential information.

We reject the Hulberts' argument. Dr. Gomez's testimony at the Omnibus hearing dealt with his opinion as to the relationship between the DPT vaccine and seizures in TS children. The information that Dr. Gomez provided was nothing more than general information, not specific to any confidential information between Dr. Gomez and the Hulberts. Moreover, as the special master stated, "neither side produced Dr. Gomez at trial on January 28, 2000, and the undersigned restricts its holding to the evidence produced at that hearing." *Hulbert v. Sec'y of the Dep't of Health and Hum. Servs.,* No. 90–1355V, 2001 WL 258060, at *5 n. 4 (Fed.Cl. Spec.Mstr. Feb. 20, 2001). Instead, the expert testimony at the final hearing came from Doctors Kinsbourne and Wiznitzer. Based on their testimony, the special master found the government's expert witness more credible than the Hulberts', and consequently found for the government.

In addition, the Hulberts argue that *Suel v. Secretary of Health and Human Services,* 192 F.3d 981 (Fed.Cir.1999) creates the "law of the case" for this matter that is sufficient to rule in their favor. We disagree. "Law of the case doctrine is a judicially created doctrine, the purpose of which is to prevent relitigation of issues that have been decided." *Id.* at 984. Thus, "a court will generally refuse to reopen or reconsider what has already been decided at an earlier stage of the litigation." *Id.* In *Suel* the Court of Federal Claims reversed the special master's denial of entitlement to the Suels. On remand to the special master, the government indicated that it *did not* intend to make a motion to reopen the entitlement decision. *Id.* This prompted the special master to advise the government that in the absence of such a motion she lacked the jurisdiction to revisit the issue of entitlement. *Id.* Thereafter, the special master awarded the Suels compensation. Only after the special master's final judgment and award of compensation did the government appeal the decision and seek to reopen the Court of Federal Claims' entitlement decision based on newly developed evidence in the TS Omnibus proceeding. *Id.* The Court of Federal Claims denied the government's appeal and this court affirmed. The events of this case are clearly distinguishable from *Suel.* In this case the government did seek to reopen the entitlement decision before there was a final judgment and before damages were awarded. Because the decision was not final, the special master did not err in considering the new evidence.

For the foregoing reasons, the judgment of the Court of Federal Claims is affirmed.