**Scott R. HAMMITT, as the Legal Representative of his Minor Daughter, Rachel HAMMITT, Petitioner,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent.**

**No. 07–170V.**

United States Court of Federal Claims.

Filed: June 23, 2011.

---

Reissued: July 8, 2011.[1]

1. This opinion originally was issued under seal on June 23, 2011. Pursuant to Rule 18(b) of the Vaccine Rules of the United States Court of Federal Claims ("Vaccine Rules"), the parties had 14 days within which to propose redactions to the opinion prior to its publication, but no such redactions were proposed. Accordingly, the opinion is herein reissued for publication, unsealed.

Curtis R. Webb, Twin Falls, Idaho, for Petitioner.

Althea Walker Davis, with whom were Tony West, Assistant Attorney General, Mark W. Rogers, Acting Director, Vincent J. Matanoski, Acting Deputy Director, and Gabrielle M. Fielding, Assistant Director, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

## OPINION AND ORDER

WHEELER, Judge.

This case is before the Court for review of the Special Master's March 4, 2011 decision on remand denying compensation to Scott R. Hammitt, on behalf of his daughter, Rachel Hammitt, under the National Vaccine Injury Compensation Program, 42 U.S.C. §§ 300aa–10 to –34 ("the Vaccine Act"). Mr. Hammitt claims that Rachel's DTaP (diphtheria, tetanus, and acellular pertussis) vaccination caused her to develop an acute seizure disorder known as Severe Myoclonic Epilepsy of Infancy ("SMEI"). Respondent contends, and the Special Master found, that a genetic component, a mutation of the SCN1A gene, predetermined that Rachel eventually would develop SMEI, whether or not she received the DTaP vaccine. For the reasons addressed below, the Court affirms the Special Master's decision.

### Factual Background

Rachel Hammitt was born on November 9, 2003. Hammitt v. Sec'y of Health & Human Servs., No. 07–170V, 2010 WL 3735705, at *2 (Fed.Cl.Spec.Mastr. Aug. 31, 2010) ("Hammitt I"). On March 15, 2004, Rachel received her second DTaP, IPV, Hepatitis B, Hib, and Pneumococcal Conjugate vaccinations at Cleveland Clinic Willoughby Hills Family Health Center in Willoughby Hills, Ohio. (Pet. ¶ 2.) Between 7:30 and 8:30 that evening, Rachel exhibited twitching in her eye and right arm, and she was foaming at the mouth. Hammitt I, at *2. Rachel's mother gave her ibuprofen and took her to the emergency room at Hillcrest Hospital in Mayfield Heights, Ohio. Id. She reported that Rachel had suffered a seizure lasting 45 minutes. Id.

Rachel's temperature upon admission to the Pediatric Emergency Department of Hillcrest Hospital was 100.4 degrees Fahrenheit. Id. The doctors gave Rachel valium, and she stopped seizing but remained stiff for approximately twenty minutes. Id. At 8:45 PM, Rachel was given a CT scan, which was normal. Id. Afterward, Rachel was crying and "moving all four extremities." Id. (quoting Pet'r's Ex. 2(b) at 19). By 9:10 PM Rachel was breast feeding, and by 9:30 PM she had fallen asleep in her mother's arms. Id. At 9:45 PM, Rachel was transferred to Cleveland Clinic Foundation Children's Hospital ("CCF"). Id. There, doctors noted that Rachel had a "possible adverse event post vaccination" and an "atypical complex febrile seizure." Id. (quoting Pet'r's Ex. 4(a) at 6). One day later, on March 16, 2004, a neurology student examined Rachel, recording that Rachel was alert and cheerful, and noting that a "DTaP reaction seems most likely." Id. (quoting Pet'r's Ex. 4(a) at 10). Rachel was then given an electroencephalogram (EEG) test, which was normal. Id. She was diagnosed as having had a complex febrile seizure and was discharged from CCF that day. Id.

On April 22, 2004, at 4:30 AM, Rachel suffered a second seizure. (Pet.¶ 6.) Her parents called 911, and at the hospital where she was taken, her laboratory work and CT scan were found to be within normal limits. Hammitt I, at *2. An EEG test performed at CCF the following day "showed focal epilepsy from the right posterior quadrant, but improved from the previous 24 hours." Id. (quoting Pet'r's Ex. 4(b) at 18). The EEG test also showed evidence of a "severe diffuse encephalopathy." Id. (quoting Pet'r's Ex. 4(b) at 48). Rachel, however, appeared awake and playful. Id. She was discharged on April 26, 2004 with a prescription for Dilantin and a scheduled follow-up appointment. Id. Thereafter, Rachel continued to suffer intermittent seizures. Id.

On November 12, 2004, Rachel visited her pediatrician for her twelve-month check-up. (Pet'r's Ex. 3(a) at 25.) Records from that appointment show a diagnosis of epilepsy but report normal growth and development.

*Hammitt I*, at *2. At her fourteen-month check-up, however, Rachel's pediatrician recorded delayed verbal and gross motor development. (Pet'r's Ex. 3(a) at 29.) Although Rachel's overall assessment listed normal growth and development, Rachel's pediatrician recommended that she be evaluated for global developmental delays at CCF. *Id.*

CCF's Department of Neurology performed another EEG test on Rachel on March 4–5, 2005. *Hammitt I*, at *3. She was assessed as having multiregional epilepsy. *Id.* Records also note that Rachel suffered mild developmental delay in language. *Id.*

Genetic testing ordered on May 3, 2005 showed that Rachel has a de novo mutation (appearing for the first time in one family member) in her SCN1A gene. *Id.* According to the report accompanying the test results, this DNA variant is "associated with a severe phenotype (SMEI or SMEB) rather than a mild or normal phenotype." *Id.* (quoting Pet'r's Ex. 12 at 2). At a follow-up appointment, Dr. Ajay Gupta indicated that Rachel's "clinical course, EEG, and SCN1A test ... are suggestive of severe myoclonic epilepsy of infancy." *Id.* (quoting Pet'r's Ex. 5 at 48–49).

### History of Proceedings

On March 13, 2007, Petitioner Scott Hammitt filed a claim in this Court for compensation under the Vaccine Act. *Id.* at *1. He asserted in his petition that the DTaP vaccination administered to Rachel on March 15, 2004 "caused her to develop a severe seizure disorder and to suffer profound developmental delays." *Id.* (quoting Pet. ¶ 3). Between March 2007 and April 2009, Mr. Hammitt filed 26 exhibits in support of his claim, including expert reports from neurologist Marcel Kinsbourne, M.D., and medical literature. *Id.* Respondent submitted its Rule 4(c) report on April 14, 2008, contending that Mr. Hammitt is not entitled to compensation under the Vaccine Act and that his petition should be dismissed. *Id.* Citing expert opinions of neurologist Max Wiznitzer, M.D., and neurologist and geneticist Gerald Raymond, M.D., Respondent asserted that Rachel's SCN1A gene mutation, not her DTaP vaccination, caused her SMEI. *Id.* Al-

though the Special Master afforded Mr. Hammitt additional time to file an expert response and Mr. Hammitt's counsel indicated in a status report that he would provide a geneticist's opinion, Mr. Hammitt ultimately opted not to retain an additional expert witness. *Id.* Instead, Mr. Hammitt filed a response by Dr. Kinsbourne on April 3, 2009. *Id.*

On May 14 and 15, 2009, the Special Master held a hearing to elicit expert testimony. *Id.* Mr. Hammitt presented his case-in-chief through the testimony of Dr. Kinsbourne, while Respondent presented the testimony of Dr. Wiznitzer in rebuttal. *Id.* To address Respondent's contention regarding Rachel's SCN1A gene mutation, Respondent presented the testimony of Dr. Raymond, and Mr. Hammitt presented the testimony of Dr. Kinsbourne. *Id.* For expediency, the Special Master heard testimony at the same time in *Stone v. Sec'y of Health & Human Servs.*, No. 04–1041V, 2010 WL 1848220 (Fed.Cl. Spec.Mstr. April 15, 2010), a similar case that also concerned the potential relationship between SCN1A gene mutations and SMEI. *Hammitt I*, at *1. Both parties submitted post-hearing briefs to the Special Master on August 19, 2009, and reply briefs on September 25, 2009. *Id.*

On August 31, 2010, Special Master Golkiewicz issued his decision denying compensation to Mr. Hammitt. *Id.* at *47. In a 54-page opinion, the Special Master found that "Rachel's SCN1A gene mutation was more likely than not the 'but for' and 'substantial factor' that caused her Severe Myclonic Epilepsy of Infancy or Dravet Syndrome." *Id.* Mr. Hammitt filed a motion for review in this Court, contesting the Special Master's causation analysis of Respondent's "factor unrelated" defense, and his conclusion that Rachel's DTaP vaccination was not a substantial cause of her SMEI. (Pet'r's Mem. Obj. at 1, Sept. 28, 2010.) Respondent filed a response on October 28, 2010, asking this Court to affirm the Special Master's decision. (Resp't's Resp. to Pet'r's Mot. for Review at 18, Oct. 28, 2010.) The Court heard oral argument on December 16, 2010.

On December 22, 2010, the Court issued an order remanding the case to Special Master

Golkiewicz, and directing him to clarify whether Mr. Hammitt established a prima facie case under the *Althen* test and whether the burden of proof therefore shifted to Respondent. (Remand Order at 2) (citing *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed.Cir.2005)). The Court also instructed the Special Master to evaluate Respondent's "factor unrelated" defense under a "sole substantial factor" standard, in accordance with *de Bazan v. Sec'y of Health & Human Servs.*, 539 F.3d 1347, 1354 (Fed. Cir.2008). (Remand Order at 2.)

On remand, Mr. Hammitt sought to file new evidence, including an article from a medical journal and letter to the editor intended to link vaccines to SMEI, as well as another report from Dr. Kinsbourne. (Pet'r's Mot. for Leave to File Evid. on Remand, Jan. 13, 2011.) Mr. Hammitt filed a motion with the Special Master and the Court to allow this evidence. *Id.* Respondent filed a response to the motion, contending that Mr. Hammitt's new evidence was untimely, beyond the scope of the Court's Remand Order, and insufficient to alter the Special Master's conclusion denying compensation. (Resp't's Resp. to Pet'r's Mot. for Leave to File Evid. on Remand at 3, Jan. 26, 2011.) The Special Master denied the motion because this Court's Remand Order called for proper evaluation of evidence existing in the record, not further development of the record, and because Mr. Hammitt failed to file this additional evidence earlier in the proceedings, despite knowing of its existence "well in advance of" the Special Master's initial decision. (Order Den. Pet'r's Mot. for Leave to File Evid. on Remand at 2–3, Feb. 3, 2011.) The Special Master also noted that Mr. Hammitt's proposed additional evidence "does not appear to support petitioner's case." *Id.*

The parties filed simultaneous briefs on remand with arguments focused on the issues raised in the Remand Order. Mr. Hammitt attempted to demonstrate a prima facie case by addressing the three prongs of *Althen*, while arguing that Rachel's SCN1A gene mutation was not the sole substantial factor that caused her SMEI. (Pet'r's Br. on Remand 1–2, 8, Feb. 4, 2011.) Respondent

contended that the "overwhelming evidence of a non-vaccine cause of Rachel's seizure disorder—namely, her SCN1A genetic mutation—demonstrates the inadequacy of petitioner's evidence attempting to establish a prima facie case of vaccine causation under *Althen*," and that even if Mr. Hammitt established a prima facie case, Respondent met its burden of proving its "factor unrelated" defense. (Resp't's Mem. Resp. Remand Order 1–2, Feb. 4, 2011.)

On March 4, 2011, the Special Master issued his remand decision, again denying compensation to Mr. Hammitt. *Hammitt v. Sec'y of Health & Human Servs.*, No. 07–170V, 2011 WL 1135878, at *10 (Fed.Cl. Spec.Mstr. Mar. 4, 2011)("*Hammitt II*"). While noting that the issue of burden shifting under the Vaccine Act "is a matter of considerable debate" and has bred "seemingly discordant precedent," the Special Master came to the following conclusions: (1) that Mr. Hammitt failed to establish a prima facie case, and (2) that, even if Mr. Hammitt had established a prima facie case, Respondent proved by a preponderance of the evidence that the SCN1A gene mutation was the sole cause of Rachel's SMEI. *Hammitt II*, at *2–3. The Special Master reasoned that, regardless of whether Respondent's rebuttal evidence may be taken into account when evaluating Mr. Hammitt's case under *Althen*, Mr. Hammitt failed to meet his initial burden. *Id.* at *4–8. Specifically, the Special Master found Mr. Hammitt's evidence insufficient to demonstrate "a logical sequence of cause and effect showing that the vaccine was the cause of the injury," prong two of the *Althen* test, because it failed to show that Rachel's first seizure injured her brain. *Id.* Furthermore, the testimony of Respondent's expert witnesses, Drs. Wiznitzer and Raymond, persuaded the Special Master that a factor unrelated to the vaccine, Rachel's SCN1A gene mutation, was solely responsible for Rachel's SMEI. *Id.* at *8–10. Based on these findings, the Special Master entered a judgment denying compensation under the Vaccine Act.

On March 25, 2011, Mr. Hammitt again moved for review by this Court, and Respon-

dent filed a response on April 25, 2011. The Court heard oral argument on May 27, 2011.

### Contentions of the Parties

On review, Mr. Hammitt asserts four objections to the Special Master's remand decision: (1) The Special Master did not apply the *Althen* test in his analysis of Mr. Hammitt's prima facie case; (2) The Special Master required direct evidence, rather than accepting circumstantial evidence, that Rachel's DTaP vaccination caused a brain injury; (3) The Special Master failed to apply the Restatement (Second) of Torts in his analysis of the role Rachel's DTaP vaccination played in causing her SMEI; and (4) The Special Master abused his discretion in denying admission of new evidence regarding a causal link between the DTaP vaccine and seizure disorders. (Pet'r's Mem. Obj. at 1, Mar. 25, 2011.)

Mr. Hammitt argues that the Special Master "does state that the 'petitioner failed to prove the prima facie case,' but reaches this conclusion without any reference to the *Althen* test." *Id.* at 6. Mr. Hammitt proceeds to explain why his case should satisfy the *Althen* test, addressing each prong of the test in succession. *Id.* at 7–10. First, Mr. Hammitt contends that his expert witness, Dr. Kinsbourne, presented "a medical theory causally connecting the vaccination and the injury," thereby satisfying prong one of *Althen*. *Id.* at 7; *Althen*, 418 F.3d at 1278. The medical theory Mr. Hammitt advances is that "the DTaP vaccination caused Rachel to experience a fever, which caused her to experience a prolonged seizure, which damaged her brain, lowering her seizure threshold and, therefore, facilitating further seizures." (Pet'r's Mem. Obj. at 7, Mar. 25, 2011.) To address prong two, "a logical sequence of cause and effect showing that the vaccination was the cause of the injury," Mr. Hammitt cites *Simon v. Sec'y of Health & Human Servs.*, No. 05–941V, 2007 WL 1772062 (Fed. Cl.Spec.Mstr. June 1, 2007), and *Mersburgh v. Sec'y of Health & Human Servs.*, No. 05–5049V, 2007 WL 5160384 (Fed.Cl.Spec.Mstr. July 9, 2007). (Pet'r's Mem. Obj. at 8, Mar. 25, 2011.) Mr. Hammitt argues that *Simon* and *Mersburgh* presented fact patterns and were based on medical findings similar to those in *Hammitt*. (Pet'r's Mem. Obj. at 8,

Mar. 25, 2011.) According to Mr. Hammitt, because the Special Master found a "logical sequence of cause and effect" in those cases, this Court should likewise make such a finding in this case. *Id.* at 8–9. Finally, Mr. Hammitt argues that "all parties agreed that there was a proximate temporal relationship between Rachel Hammitt's March 15, 2004 DTaP vaccination and her first seizure which was the onset of her SMEI," and that therefore, he satisfied prong three of *Althen*. *Id.* at 9.

Next, Mr. Hammitt argues that by rejecting Dr. Kinsbourne's brain injury theory as mere "inference," the Special Master required direct evidence that Rachel's vaccination caused brain injury, whereas the Federal Circuit in *Althen*, 418 F.3d at 1279–80, "has ... unequivocally held that petitioners can rely on circumstantial evidence in Vaccine Act claims." (Pet'r's Mem. Obj. at 11, Mar. 25, 2011.)

In his third objection, Mr. Hammitt contends that the Federal Circuit in *Shyface v. Sec'y of Health & Human Servs.*, 165 F.3d 1344, 1351–52 (Fed.Cir.1999), and *de Bazan*, 539 F.3d at 1351–54, adopted the Restatement (Second) of Torts for determining legal cause in claims brought under the Vaccine Act. Thus, according to Mr. Hammitt, the Special Master erred in failing to cite the Restatement when he found that Rachel's SCN1A gene mutation was the sole substantial cause of her SMEI. (Pet'r's Mem. Obj. at 12–14, Mar. 25, 2011.) Mr. Hammitt further argues that under the Restatement's causation principles, Rachel's DTaP vaccination was a substantial factor in causing her SMEI, and Respondent's "factor unrelated" defense fails because Rachel's SCN1A mutation does not meet the criteria of a superseding cause. *Id.* at 15–18.

Finally, Mr. Hammitt asserts that the Special Master abused his discretion in deciding not to consider additional evidence on remand. *Id.* at 21. The evidence includes articles by Ann M. McIntosh, *Effects of Vaccination on the Onset and Outcome of Dravet Syndrome: A Retrospective Study*, 9(6) *Lancet Neurol*, 592 (2010), and by Yuval Shafrir, *Vaccination and Dravet Syndrome*, 9(12) *Lancet Neurol*, 1147 (2010), and anoth-

er expert report from Dr. Kinsbourne. (Pet'r's Mem. Obj. at 22, Mar. 25, 2011.) Mr. Hammitt contends that this evidence, which discusses the relative occurrences of Dravet Syndrome onset between a "vaccination-proximate" group and a "vaccination-distant" group, "was highly relevant and could have changed the outcome of [his] claim." *Id.* at 23–25. Mr. Hammitt urges the Court to consider the additional evidence and use it to conclude that he is entitled to compensation. *Id.*

Respondent counters that the Special Master correctly found Mr. Hammitt's evidence inadequate to establish a prima facie case. (Resp't's Resp. to Pet'r's Mot. Review at 4, Apr. 25, 2011.) Like the Special Master, Respondent maintains that Mr. Hammitt failed to satisfy prong two of *Althen* because "Dr. Kinsbourne was unable to offer any reliable evidence to support the presence of brain damage, an essential element of his theory." *Id.* at 5–6. Respondent argues that the speculative nature of Mr. Hammitt's evidence, not its circumstantial character, ultimately led the Special Master to reject Mr. Hammitt's brain damage theory. *Id.* at 7. Moreover, Respondent argues that based on *Doe/11 v. Sec'y of Health & Human Servs.*, 601 F.3d 1349 (Fed.Cir.2010), and the language of the Vaccine Act itself, the Special Master was correct to consider "the record as a whole," including Respondent's rebuttal evidence regarding Rachel's SCN1A gene mutation, in evaluating Mr. Hammitt's prima facie case. (Resp't's Resp. to Pet'r's Mot. Review at 8–9, Apr. 25, 2011.) According to Respondent, when considering its "overwhelming evidence" that Rachel's SCN1A gene mutation caused her SMEI, Mr. Hammitt's prima facie case must fail. *Id.* at 9.

Respondent also refutes Mr. Hammitt's contentions regarding the standards of "legal cause." *Id.* at 9–16. Respondent contends that the language of the Vaccine Act supplies the burden of proving causation by a "factor unrelated" to the vaccine: Respondent must show by a "preponderance of the evidence" that the factor unrelated was "principally responsible" for the injury. (Resp't's Resp. to Pet'r's Mot. Review at 11, Apr. 25, 2011 (citing 42 U.S.C. § 300aa–13(a)).) Respon-

dent cites *de Bazan*'s "sole substantial factor" language as support for this argument, but explains that "sole" should be interpreted in the sense that "the factor unrelated, not the vaccination, is more likely the cause of the injury alleged." (Resp't's Resp. to Pet'r's Mot. Review at 11 n. 7, Apr. 25, 2011.) When applying these standards to the evidence linking SCN1A gene mutations to SMEI, Respondent argues, Rachel's gene mutation was the "legal cause" of her SMEI. (Resp't's Resp. to Pet'r's Mot. Review at 12, Apr. 25, 2011.)

Finally, Respondent argues that the Special Master properly exercised his discretion in refusing to admit Mr. Hammitt's additional evidence on remand. *Id.* at 17. Respondent reiterates that the submission of new evidence was beyond the scope of the Remand Order, that Mr. Hammitt's motion to file the evidence was untimely, and that the evidence does not support Mr. Hammitt's case. *Id.*

### Standard of Review

■ When reviewing the decision of a special master, this Court employs a de novo standard on legal issues. *Broekelschen v. Sec'y of Health & Human Servs.*, 618 F.3d 1339, 1345 (Fed.Cir.2010). In this respect, the Court "owe[s] no deference to ... the special master on questions of law." *Id.* The special master's findings of fact, however, require deference. *Id.* This Court must accept the special master's findings of fact unless they are arbitrary and capricious. *Id.* In Vaccine Act cases, the special master's decision often is based on "the credibility of the experts and the relative persuasiveness of their competing theories." *Id.* at 1347. "This Court does not reweigh the evidence," "assess whether the special master correctly evaluated the evidence," or "examine ... the credibility of the witnesses." *Id.* at 1349 (quoting *Munn v. Sec'y of Health & Human Servs.*, 970 F.2d 863, 871 (Fed.Cir.1992)).

### Discussion

A.  *The Special Master Applied the Correct Legal Standards in Concluding that Mr. Hammitt's Petition Must be Denied.*

■ In the Vaccine Act, Congress established two ways for a petitioner to prove a

case for injury compensation. 42 U.S.C. § 300aa–11; *Pafford v. Sec'y of Health & Human Servs.*, 451 F.3d 1352, 1355 (Fed.Cir. 2006). The first occurs when the petitioner received a vaccine that appears on the Vaccine Injury Table and, within a prescribed time period, suffered an injury listed on the Table for the vaccine. 42 U.S.C. §§ 300aa–13(a)(1), –14(a); *Pafford*, 451 F.3d at 1355. In this instance, the Court presumes causation by the vaccine, and respondent bears the burden of proving that the actual cause of the injury was a factor unrelated to the vaccine. 42 U.S.C. §§ 300aa–13(a)(1), –14(a); *Pafford*, 451 F.3d at 1355.

■ If the petitioner suffered an "off-table injury," however, the petitioner bears the burden of proving causation-in-fact by the vaccine. 42 U.S.C. §§ 300aa–13 (a)(1), –14(a); *Pafford*, 451 F.3d at 1355. The Federal Circuit defined the petitioner's burden as follows:

> [Petitioner]'s burden is to show by preponderant evidence that the vaccination brought about [the] injury by providing: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury.

*Althen*, 418 F.3d at 1278.

If the petitioner satisfies the three prongs of *Althen*, he has established a prima facie case, "absent proof that some other factor was the actual cause." *de Bazan*, 539 F.3d at 1354. If respondent, however, presents evidence of an alternative cause "to demonstrate the inadequacy of petitioner's evidence on a requisite element of petitioner's case-in-chief," the special master may "consider such evidence in deciding whether [the petitioner] established a prima facie case." *de Bazan*, 539 F.3d at 1353; *Doe/11*, 601 F.3d at 1351, 1358.

■ If the petitioner succeeds in establishing a prima facie case, the burden shifts to respondent to demonstrate by a preponderance of the evidence that a "factor unrelated" to the vaccine "was the sole substantial factor

in bringing about the injury." 42 U.S.C. § 300aa–13(a); *de Bazan*, 539 F.3d at 1352. A "factor unrelated" may include "infection, toxins, trauma (including birth trauma and related anoxia), or metabolic disturbances which have no known relationship to the vaccine involved," but may not include "any idiopathic, unexplained, unknown, hypothetical, or undocumentable cause, factor, injury, illness or condition." 42 U.S.C. § 300aa–13(a)(2).

Here, the Special Master applied the above burden-shifting framework for "off-table" cases in his remand decision, first evaluating whether Mr. Hammitt established a prima facie case. *Hammitt II*, at *4–10. As the Special Master determined, Mr. Hammitt did not establish a prima facie case because of a failure of proof regarding prong two of *Althen*. *Id.* at *8. Indeed, Mr. Hammitt proffered a "medical theory causally connecting the vaccination and the injury," satisfying prong one. Specifically, "the DTaP vaccination caused Rachel to experience a fever, which caused her to experience a prolonged seizure, which damaged her brain, lowering her seizure threshold and, therefore, facilitating further seizures." (Pet'r's Mem. Obj. at 7, Mar. 25, 2011.) Also, given the undisputed fact that Rachel's first prolonged seizure occurred just hours after the administration of her DTaP vaccination, Mr. Hammitt easily demonstrated a "proximate temporal relationship between vaccination and injury," as called for in prong three of *Althen*. *Id.* at 9.

■ Mr. Hammitt could not, however, substantiate his medical causation theory with persuasive evidence that Rachel's seizure actually produced brain damage, the theory's vital element that allegedly "lower[ed] [Rachel's] seizure threshold" and "facilitate[ed] further seizures." *Hammitt II*, at *7–8. Although Mr. Hammitt's expert, Dr. Kinsbourne, testified that prolonged seizures are "apt to cause brain damage," Dr. Kinsbourne admitted that Rachel manifested no signs of brain damage. *Hammitt I*, at *41 (quoting Tr. at 476). Mr. Hammitt's failure to prove brain damage—especially combined with the convincing testimony of Respondent's experts that even before her first seizure, Rachel was "destined to develop SMEI" be-

cause of her SCN1A gene mutation—left a sizeable gap in his proposed "logical sequence of cause and effect" linking Rachel's DTaP vaccination to her SMEI. *Hammitt II*, at *7–8 (quoting Tr. at 134–35). Thus, Mr. Hammitt did not prove by a preponderance of the evidence that Rachel's DTaP vaccination was the cause-in-fact of her SMEI and did not establish a prima facie case. *Id.*

Given that Mr. Hammitt did not meet his initial burden, this case presents no need for the burden to shift to Respondent to prove by a preponderance of the evidence that a factor unrelated to the vaccine was the "sole substantial factor" in causing Rachel's SMEI. *See* 42 U.S.C. § 300aa–13(a)(1); *de Bazan*, 539 F.3d at 1354. Like the Special Master, this Court finds Respondent's evidence that Rachel's SCN1A gene mutation caused her SMEI strong enough to demonstrate that it was the "sole substantial" cause, even though Respondent was not required to do so. *Hammitt II*, at *10.

As the Special Master noted, the testimony of Respondent's experts was "well explained, cogent, based upon the knowledge and practices of a clinical geneticist, and supported by the medical literature." *Hammitt I*, at *41. Specifically, Respondent's experts established the following points, which the Special Master found crucial:

— Rachel's mutation arose *de novo;*

— the mutation at issue results in a non-conservative amino acid change with the new amino acid having very different physical properties from what is found at the location in non-affected individuals;

— the mutation affects the beginning of the resultant protein, the N–terminus, a functionally important region, as evidenced by a report of only SMEI resulting from mutations in this region;

— the mutation occurs in an area that is well-conserved across species, signaling significant ramifications when altered; and

— there are reports evidencing similar or comparable mutations resulting in SMEI in or near the same location as Rachel's mutation, and there is an absence of the mutation in the normal population.

*Hammitt II*, at *8–9. Dr. Raymond testified that these factors, when examined by a geneticist, cumulatively demonstrate that Rachel's SCN1A gene mutation caused her SMEI. *Hammitt I*, at *22. Moreover, because Mr. Hammitt's expert had no experience or special knowledge in genetics, the testimony of Respondent's experts went "essentially unrebutted." *Hammitt I*, at *10; *Hammitt II*, at *3. For these reasons, the Court agrees with the Special Master's conclusion that Rachel's SCN1A gene mutation was solely responsible for Rachel's SMEI and that Mr. Hammitt's claim must be denied.

## B. *Mr. Hammitt's Contentions Must be Rejected.*

First, Mr. Hammitt requests the Court to set aside the Special Master's decision because the Special Master did not apply the *Althen* test. (Pet'r's Mem. Obj. at 6, Mar. 25, 2011.) Mr. Hammitt, however, is mistaken. As discussed above, the Special Master applied the *Althen* test and found that Mr. Hammitt failed to satisfy prong two of that test. *Hammitt II*, at *7–8. The Court agrees with the Special Master's conclusion.

Mr. Hammitt argues that he satisfies each element of the *Althen* test because his case fits the same factual pattern observed in *Simon* and *Mersburgh*, both of which resulted in petitioners establishing a prima facie case and receiving compensation. (Pet'r's Mem. Obj. at 7–8, Mar. 25, 2011.) The factual pattern occurs when, as described in *Simon* and *Mersburgh*, "[a]n otherwise healthy [child] receives a vaccination, the vaccine causes a fever, which in turn causes or triggers a complex febrile seizure." *Id.* at 8 (quoting *Hammitt I*, at *10). The Special Master noted in *Mersburgh* and *Hammitt I* that "[i]f a case fits this described pattern, as the case at hand does, the undersigned is strongly inclined to find in favor of the petitioner" because according to some medical literature, "prolonged complex seizures are recognized as the antecedent of sequelae." *Id.* at 8 (quoting *Hammitt I*, at *11). Mr. Hammitt argues that because the Special

Master in *Simon* and *Mersburgh* found this evidence enough to demonstrate a "logical sequence of cause and effect showing that the vaccination was the reason for the injury," thus satisfying prong two of *Althen*, the Special Master must find he also has satisfied prong two of *Althen*, when his case presents such similar facts and evidence. *Id.* at 8–9.

The outcomes of *Simon* and *Mersburgh*, however, have no bearing on Mr. Hammitt's case. First, Mr. Hammit's case is distinguishable from *Simon* and *Mersburgh*. In *Simon*, there was "much agreement between the experts . . . . that [the child's] initial seizure [was] connected to [his] subsequent seizures" and to his development of epilepsy. *Simon*, at *4. In contrast, Dr. Raymond and Dr. Wiznitzer argued persuasively that Rachel's first seizure neither injured her brain nor "lowered her seizure threshold." *Hammitt I*, at *41. Furthermore, in *Simon* and *Mersburgh*, although respondents' experts testified that a genetic predisposition was likely responsible for the children's epilepsy disorders, respondents presented no concrete evidence of a genetic predisposition. *Simon*, at *7; *Mersburgh*, at *3. According to the Special Master, such "speculation" was not enough to rebut either petitioner's prima facie case. *Simon*, at *7; *Mersburgh*, at *3. Genetic testing of Rachel Hammitt, however, has confirmed that Rachel possesses an SCN1A gene mutation commonly associated with SMEI in the medical profession. *Hammitt I*, at *3. Considering this case's unique facts and evidence, the Special Master did not err in concluding that Mr. Hammitt failed to establish a prima facie case.

Second, as Respondent notes in its brief, special masters are not bound by their own previous decisions or the decisions of other special masters, and they "have discretion to evaluate the utility of [the evidence] differently in light of all facts relevant in a specific claim." *Sharpnack v. Sec'y of Health & Human Servs.*, 27 Fed.Cl. 457, 461 (1993), *aff'd*, 17 F.3d 1442 (Fed.Cir.1994); *Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998), *aff'd*, 191 F.3d 1344, 1348 (Fed.Cir.1999) ("Special masters are neither bound by their own decisions nor by cases from the Court of Federal Claims, except, of course, in the same case on remand."). Unbound by his decisions in *Simon* and *Mersburgh*, the Special Master was free to examine the evidence in Mr. Hammit's case differently and to deny him compensation. *See Sharpnack*, 27 Fed.Cl. at 461; *Hanlon*, 40 Fed.Cl. at 630.

Mr. Hammitt's next objection is that the Special Master required direct evidence of brain damage, whereas, Mr. Hammitt argues, the Federal Circuit has found circumstantial evidence sufficient. (Pet'r's Mem. Obj. at 10–12, Mar. 25, 2011.) Here, Mr. Hammitt mischaracterizes the Special Master's reasoning. The Special Master did not reject Mr. Hammitt's evidence of brain damage because it was "circumstantial." He rejected it because it did not satisfy the legal standard, which requires preponderant evidence demonstrating the three prongs of *Althen*. *See Hammitt II*, at *7–8. As stated above, this Court agrees with the Special Master that Mr. Hammitt's speculation of brain damage failed to satisfy prong two of the *Althen* test.

Mr. Hammitt also takes issue with the Special Master's failure to apply the Restatement (Second) of Torts principles for determining causation. (Pet'r's Mem. Obj. at 12, Mar. 25, 2011.) Mr. Hammitt is correct that the Federal Circuit has cited the Restatement (Second) of Torts in stating that a petitioner under the Vaccine Act must show "that the vaccine was not only a but-for cause of the injury but also a substantial factor in bringing about the injury." *Shyface*, 165 F.3d at 1352–53. As the Federal Circuit later explained, however, a petitioner makes this showing by satisfying the three prongs of *Althen*, 418 F.3d at 1278. Finding that Mr. Hammitt did not satisfy prong two, the Special Master determined, in accordance with the Restatement (Second) of Torts, that Rachel's DTaP vaccination was not a substantial factor in bringing about her SMEI. *Hammitt II*, at *4. Furthermore, contrary to Mr. Hammitt's argument, the "factor unrelated" defense under the Vaccine Act is not analogous to the defense of "superseding cause" in the common law. Finding that "Rachel's SCN1A gene mutation was the sole, substantial cause, principally responsible for her SMEI," the Special Master fol-

lowed the proper legal standard to determine that Respondent's factor unrelated defense succeeds and that Mr. Hammitt does not merit compensation. *Hammitt II*, at *10.

Mr. Hammitt's final objection concerns the Special Master's refusal to consider additional evidence. (Pet'r's Mem. Obj. at 21, Mar. 25, 2011.) Even after reviewing this evidence, however, the Court reaches the same conclusion as the Special Master that Rachel's DTaP vaccination was not the cause-in-fact of her SMEI, and her SCN1A gene mutation was the "sole substantial" cause of her SMEI.

### Conclusion

For the foregoing reasons, the Special Master's March 4, 2011 decision denying compensation is AFFIRMED. This Court finds that the Special Master did not err in denying Mr. Hammitt's claim. Accordingly, Petitioner's motion for review is DENIED.

Pursuant to Rule 18(b) of the Court's Vaccine Rules (found in Appendix B), the parties may submit any proposed redactions of confidential or other protected information within fourteen days from the date of this opinion before it is released for publication.

IT IS SO ORDERED.